FILED

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

2012 JUL 23 P 12: 44

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

|  |  |
|---|---|
| METROPOLITAN WASHINGTON AIRPORTS AUTHORITY 1 Aviation Circle Washington, D.C. 20001 | ) ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Civil Action No.: *1:12cv·810 LO6/TCB* |
| OSMAN RIAZ 11090 Saffold Way Reston, VA 20190, | ) ) ) ) |
| and | ) ) |
| BURKI LIMOUSINE & SEDAN, INC. | ) ) |
| Serve: Osman Riaz, Registered Agent 10208 Oxfordshire Road Great Falls, VA 22066; | ) ) ) ) |
| Defendants. | ) ) ) |

## VERIFIED COMPLAINT

Plaintiff, Metropolitan Washington Airports Authority ("MWAA"), alleges the following complaint against Defendants Osman Riaz ("Riaz") and Burki Limousine & Sedan, Inc. ("Burkilimo") (collectively referred to as "Defendants"), as follows:

## INTRODUCTORY STATEMENT

This case arises from Defendants' continuous and flagrant infringement of MWAA's distinctive and incontestable service mark WASHINGTON FLYER through the unauthorized use of the mark in commerce and by and through Defendants' websites

LAW OFFICES
BEAN, KINNEY & KORMAN
A PROFESSIONAL CORPORATION
2300 WILSON BOULEVARD, 7TH FLOOR
ARLINGTON VIRGINIA 22201

located at domain names <washingtonflyer.info> and <sedanflyer.com>.   Despite

receiving numerous cease and desist letters and being the subject of a domain name

arbitration panel decision denouncing their actions, Defendants defiantly carries on this

deception, alluring consumers by the exploitation and blatant infringement of MWAA's

hard-earned reputation to their profit.

## NATURE OF THE ACTION

1.      This is an action for (a) service mark infringement in violation of

15 U.S.C. § 1114; (b) dilution in violation of 15 U.S.C. § 1125(c); (c) unfair competition,

false advertising and false designation of origin in violation of 15 U.S.C. § 1125(a); and

(d) unfair competition and false designation of origin in violation of Virginia Trademark

and Service Mark Act, Code of Virginia, § 59.1-92.1, et seq.

2.      This case arises from Defendants' infringement of MWAA's federally–

registered and distinctive service mark WASHINGTON FLYER through the

unauthorized use of the mark in commerce and by and through Defendants' websites

located at domain names <washingtonflyer.info> and <sedanflyer.com>.

3.      Upon information and belief, at all times relevant therein, each of the

Defendants directed, knew, or reasonably should have known of the acts and behavior

alleged herein and the damages caused thereby, and by their actions and/or inactions

directed, ratified, and encouraged such acts and behavior.

4.      MWAA further alleges that Defendants each had a non-delegable duty to

prevent such acts and the behavior described herein, which duty Defendants failed and/or

refused to perform.

2

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims set forth in this Complaint pursuant to Section 32 of the Lanham Act, 15 U.S.C. § 1114, Sections 43(a) and (c) of the Lanham Act, 15 U.S.C. § 1125 et seq., 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, and 1338.  This Court has supplemental jurisdiction over claims in this Complaint that arise under state statutory and common law pursuant to 28 U.S.C. §§ 1338(b) and 1367 in that the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.  This Court has personal jurisdiction over Defendants because Defendants do business throughout the Commonwealth of Virginia.

6.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because the parties are located in, or transact their affairs in, this district and the wrongful actions at issue take place in this division of this District.

## PARTIES

7.     Plaintiff MWAA is a body politic organized and operated as a federal agency assignee of the United States, with its principal place of business located at 1 Aviation Circle, Washington, D.C. 20001.

8.     Defendant Riaz is a natural person residing at 11090 Saffold Way, Reston, VA 20190.  Upon information and belief, Riaz is one of the controlling principals and is an officer of and the registered agent for Defendant Burkilimo.  Riaz is the listed registrant for the <washingtonflyer.info> and <sedanflyer.com> domain names.

9.     Defendant Burkilimo is a corporation organized and existing under the laws of the Commonwealth of Virginia, with its principal place of business at 10208

3

Oxfordshire Road, Great Falls, VA 22066.  Upon information and belief, Burkilimo is the source of the services provided through the <washingtonflyer.info> and <sedanflyer.com> domains.

## FACTS COMMON TO ALL COUNTS

10.     MWAA is the agency responsible for the day-to-day operations and maintenance of two of the busiest airports in the United States: Ronald Reagan National Airport ("Reagan") and Dulles International Airport ("Dulles").

11.     In 2011, Reagan and Dulles served over 42 million passengers and over 600,000 in-bound and out-bound flights.

12.     As one of the many services MWAA provides to travelers, MWAA controls and regulates ground transportation services for passengers flying in and out of Dulles.

13.     In order to protect its valuable intellectual property, MWAA filed applications with the U.S. Patent and Trademark Office ("USPTO") for its WASHINGTON FLYER (& Design) Mark and WASHINGTON FLYER word mark, based on its first use in commerce of the marks on November 30, 1983.  USPTO issued MWAA registration certificates for its WASHINGTON FLYER (& Design) mark (U.S. Reg. No. 1,357,214) (the "214 Mark") in 1985 and WASHINGTON FLYER mark (U.S. Reg. No. 4,066,324) in 2011 (collectively, the "WASHINGTON FLYER Marks").

14.     Pursuant to 15 U.S.C. § 1057(b), MWAA's federal registrations are *prima facie* evidence that MWAA is the exclusive owner of the valid, incontestable, legally protectable and subsisting WASHINGTON FLYER Marks for ground transportation

4

services. A copy of MWAA's certificates for each of its federal registration certificates are attached hereto and incorporated herein as Exhibits 1.

15.     The WASHINGTON FLYER Marks are also protectable pursuant to the Virginia Trademark and Service Mark Act of 1998 due to the fact MWAA has used the marks continuously and without interruption within the Commonwealth of Virginia since 1983.

16.     Since as early as 1983, MWAA has contracted with third parties for the provision of ground transportation services in and out of Dulles, with a license to operate under the trade name WASHINGTON FLYER. MWAA is the exclusive owner of this mark and all benefit and goodwill derived from the contractors' use of the mark inures to MWAA.

17.     In providing such services, MWAA has entered into ground transportation contracts with companies that provide taxicab, shared ride van, and bus services at Dulles under the WASHINGTON FLYER Marks. These contractors manage fleets of approximately 720 taxis, 147 vans, and 3 coaches.

18.     Upon information and belief, the WASHINGTON FLYER-branded ground transportation options provide services to over two million passengers per year.

19.     MWAA owns and operates a website located at <washfly.com>, which provides consumers with information on the WASHINGTON FLYER branded ground transportation services. The website provides consumers with information regarding options on ground transportation to and from Dulles, rates, locations within the airport where consumers can seek out the services and contact information for making reservations.

20. MWAA also owns and operates a website, located at <washingtonflyer.com>, which hosts the Washington Flyer Magazine, the official magazine of MWAA, Reagan and Dulles.

21. MWAA prides itself on providing consumers with the highest quality of service because it recognizes that it operates in a competitive environment and desires to differentiate itself from others in the industry.

22. In order to achieve these standards, MWAA operates an exclusive branded ground transportation system with its fleet of taxis at Dulles that allows it to better monitor the quality of the services provided to consumers seeking transportation from Dulles.

23. At Reagan, MWAA operates an exclusive branded, shared ride van system under the WASHINGTON FLYER Marks.

24. MWAA's system includes daily inspection of WASHINGTON FLYER-branded vehicles to ensure that all branded vehicles are clean, well-maintained and to maximize its customers' safety.

25. In order to maintain the quality of the services offered, contractors and drivers authorized to operate WASHINGTON FLYER-branded vehicles must meet stringent standards.

26. MWAA has painstakingly established a strong identity, as well as tremendous recognition and goodwill among consumers, in the WASHINGTON FLYER Marks as a result of 29 years of using the Marks in commerce and expending considerable resources in marketing the brand. Consumers have invariably come to associate the distinctive WASHINGTON FLYER Marks with MWAA. When travelers

6

arrive at Dulles and encounter the WASHINGTON FLYER ground transportation services booth, associated signage and branded vehicles, they associate those services with MWAA. Furthermore, consumers seek out WASHINGTON FLYER sedans and coaches over other branded ground transportation because of the high quality of services they have come to expect and receive from MWAA's WASHIINGTON FLYER ground transportation services.

27. As a result of marketing expenditures and its long-term use of the Marks, MWAA's WASHINGTON FLYER Marks are recognizable in the industry and by its customers, and have achieved a high level of renown and fame.

## Defendants' Repeated and Documented Infringing Actions

28. Defendants have misappropriated MWAA's WASHINGTON FLYER Marks, through various activities on the Internet, without any consideration for MWAA's exclusive ownership rights in its Marks and the harm their actions do to the Marks and MWAA.

29. In addition to the infringing activities evident on the <washingtonflyer.info> and <sedanflyer.com> websites, Defendants have gone to great lengths to infringe on MWAA's exclusive rights in its WASHINGTON FLYER Marks, including resorting to blatant cyber-squatting.

30. Indeed, in addition to Defendants' ownership and control of the <washingtonflyer.info> and <sedanflyer.com> domains, Riaz also registered, and until recently owned, the domain names <washingtonflier.com> and <washingtonflyer.us>, both of which purported to offer ground transportation services and which blatantly infringed on the WASHINGTON FLYER Marks.

7

31.     By purchasing and operating these multiple infringing domain names Defendants purposefully misdirected consumers who either misspelled the WASHINGTON FLYER Marks while seeking MWAA's website and services or typed in the ".info" or ".us" generic top-level domain ("gTLD") extension, as opposed to the ".com" gTLD.

32.     Such activities have caused numerous instances of actual confusion to consumers who were misdirected to Defendants' websites when seeking MWAA's services. Correspondence illustrating examples of actual confusion among consumers is attached hereto and incorporated herein as Exhibit 2.

33.     In fact, the existence of these domains came to the attention of MWAA as a result of several documented instances where consumers trying to contact MWAA were diverted to the Defendants' websites identified in Paragraph 29. Once made aware of the existence of these domain names and associated websites, MWAA demanded in writing that Defendants voluntarily cease and desist in their blatant infringing activities and transfer the offending domain names to MWAA.

34.     MWAA made every *bona fide* attempt to avoid litigation, but was rebuffed at every turn by Defendants. In one correspondence, Riaz even suggested MWAA purchase the infringing domain names, notwithstanding the blatant misappropriation of MWAA's intellectual property and actual confusion ensuing therefrom. See Exhibit 3.

35.     As a result of Riaz's unwillingness to transfer the domain names <washingtonflier.com> and <washingtonflyer.us> to MWAA, and cease his infringing actions, attempts at misdirecting consumers and siphoning off MWAA's well-established goodwill in the WASHINGTON FLYER 214 Mark, MWAA filed domain name

8

complaints with the National Arbitration Forum pursuant to the Uniform Domain Name Dispute Resolution Policy ("UDRP") with respect to such domain names.

36.    In the UDRP complaints, MWAA argued that the domain names were confusingly similar to its WASHINGTON FLYER 214 Mark, that Defendant Riaz had no rights to the domain names and that the domain names were registered in bad faith.

37.    On October 6, 2010 and October 27, 2010, the UDRP panelists issued decisions transferring both the <washingtonflier.com> and <washingtonflyer.us> domain names, to MWAA. In both decisions, the panelists determined that Riaz's clear intention for registering and using these domains for transportation services was to lure MWAA's consumers to his websites. Further, the panelists found Riaz had no intention of using the websites for legitimate purposes that did not engender confusion among consumers. Copies of the UDRP decisions are attached hereto and incorporated herein as Exhibit 4.

38.    Despite the panelists' determination that the Defendants acted in bad faith and that the relevant domain names should be transferred to MWAA, Defendants have since simply shifted their scheme and it has subsequently came to MWAA's attention that Defendants were operating yet two more websites, located at <washingtonflyer.info> and <sedanflyer.com>, which are blatant infringements on MWAA's WASHINGTON FLYER Marks.    Specifically, Defendants identify themselves as Washington Flyer throughout the website and use MWAA's WASHINGTON FLYER Marks in the sites' metatags.

39.    When visiting Defendants' <sedanflyer.com> website, consumers initially encounter the wording "Washington Flyer – DC Ground Transportation" in bold, red lettering in an attempt by Defendants to pass themselves off as either Washington Flyer

9

or MWAA. Thereafter, half way down the page, Defendants state "At **Washington Flyer** you can expect the following … ." Defendants use MWAA's Marks throughout the website without regard to MWAA's rights in the WASHINGTON FLYER Marks. Screenshots from the <sedanflyer.com> website are attached hereto and incorporated herein as Exhibit 5.

40.     Defendants' <washingtonflyer.info> website features a header reading "Washington Flyer Limousine" in bold, white lettering, an additional effort by Defendants to misconstrue their business as associated with Washington Flyer and/or MWAA. Farther down the page, Defendants state "Washington Flyer Limousine is proud to be the DC areas [sic] first choice in luxury ground transportation." Defendants use MWAA's Marks throughout the website without regard to MWAA's rights in the WASHINGTON FLYER Marks. Screenshots from the <washingtonflyer.info> website are attached hereto and incorporated herein as Exhibit 6.

41.     Defendants have made unmitigated use of MWAA's WASHINGTON FLYER Marks throughout the <washingtonflyer.info> website and within the source code for the websites, a copy of which is attached hereto and incorporated herein as Exhibit 7.

42.     Further, Defendants have used MWAA's WASHINGTON FLYER Marks as the "key word" for their paid advertisement of their website on Google®, with the result that Defendants' website appears, as a result of a Google®, search for "Washington Flyer", right next to MWAA's own website <washfly.com>. See Exhibit 8 attached hereto and incorporated herein.

43.     The title and brief description of Defendants' website in the search result prominently feature MWAA's WASHINGTON FLYER Marks, without MWAA's permission or authorization and to MWAA's detriment, further leading to a likelihood of confusion among consumers.

44.     Consumers who have conducted this search through Google, or another search engine, while seeking MWAA's services, have encountered Defendants' website and assumed that it was either MWAA or was endorsed, affiliated with, or sponsored by MWAA.  It is clear that Defendants are attempting to hold themselves out as Washington Flyer in order to misdirect consumers, generate business and profits through the unauthorized use of the WASHINGTON FLYER Marks and siphon off the goodwill MWAA has generated in its federally-registered, distinctive and renowned mark.

45.     In order to avoid litigation and resolve this matter amicably and expeditiously, particularly in light of the UDRP decisions, MWAA again served Defendant Riaz with a cease and desist letter on February 11, 2011, demanding that Defendants cease use of the WASHINGTON FLYER Marks or any similar derivation on the website or within the website's source code.

46.     MWAA's reasonable demands were not met, and instead Defendants ignored the cease and desists letters and continued with their blatant, intentional and willful violations of MWAA's Marks, leaving MWAA with no other viable option but to seek redress through litigation.

47.     Defendants' actions have and will likely continue to cause confusion to consumers as to the source of the services provided through their company.

48. Members of the public were and are likely to continue to believe Defendants either are MWAA or Washington Flyer or are affiliated with, sponsored by or licensed by MWAA to use the WASHINGTON FLYER Marks in providing ground transportation services and that such services are rendered with the approval of MWAA.

49. By the acts and activities complained of herein, Defendants have passed off their services as rendered by, associated with, connected with, sponsored by, under license from or with the approval of MWAA.

50. Defendants' acts complained of herein are likely to cause and/or have caused confusion, initial interest confusion, mistake or deception among the trade or public, and may likely have the effect of diluting the WASHINGTON FLYER Marks through blurring and/or tarnishment.

51. On information and belief, Defendants' refusal to cease use of the WASHINGTON FLYER Marks and the infringement complained of herein was willful, intentional and deliberate and represents an attempt by Defendants to appropriate the goodwill MWAA has engendered in the WASHINGTON FLYER Marks to obtain Defendants recognition and advantage in the marketplace, which Defendants would not otherwise possess.

52. By trading upon the goodwill of MWAA's intellectual property, Defendants have obtained for their services a salability that they would not have otherwise had.

53. Defendant's adoption and use of the WASHINGTON FLYER Marks for ground transportation services was, and is: (a) with full knowledge of MWAA's ownership in the federally-registered, distinctive and unique Marks, and (b) with the

intent and for the purpose, and has had the effect of wrongfully infringing upon MWAA's intellectual property rights.

54.     MWAA has no control over the quality of services provided by Defendants. As such, MWAA's valuable goodwill with respect to its intellectual property will be irreparably damaged by the acts of Defendants.

55.     Defendants' activities complained of herein have caused and, unless restrained and enjoined by the Court, will continue to cause irreparable harm, damage and injury to MWAA.

**COUNT I**

**Federal Statutory Trademark Infringement in Violation of the Lanham Act**

56.     MWAA hereby realleges and incorporates Paragraphs 1 through 55, as if fully set forth herein.

57.     Defendants have without permission from MWAA, deliberately, willfully and with the intention of benefiting from the reputation and goodwill of MWAA, continued to use MWAA's distinctive WASHINGTON FLYER Marks in connection with Defendants' ground transportation services.

58.     The unauthorized practices of Defendants, as alleged in the foregoing paragraphs, constitute service mark infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), which prohibits the use in commerce in connection with the sale of goods or rendering of any services of any word, term, name, symbol, or device or any combination thereof which is likely to cause confusion, or to cause mistake, or to deceive as to the source of the goods or services.

13

59.     As a direct and proximate result of the willful and wanton conduct of Defendants, MWAA has been injured and will continue to suffer irreparable injury to its business and reputation unless this Court restrains Defendants from infringing on MWAA's service marks.

60.     MWAA has no adequate remedy at law, and is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(d).

61.     MWAA is entitled to recover actual damages and Defendants' profits pursuant to 15 U.S.C. § 1117(a); treble damages pursuant to 15 U.S.C. § 1117(a) and (b); and, attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a).

62.     As a result of the Defendants' actions as stated herein, MWAA has been damaged in an amount to be determined at trial.

## COUNT II

### Federal False Designation of Origin in Violation of the Lanham Act

63.     MWAA hereby realleges and incorporates Paragraphs 1 through 55, as if fully set forth herein.

64.     Defendants have without permission from MWAA, deliberately, willfully and with the intention of benefiting from the reputation and goodwill of MWAA, continued to use MWAA's distinctive WASHINGTON FLYER Marks in connection with Defendants' ground transportation services.

65.     Defendants' continued commercial use of the WASHINGTON FLYER Marks is intentionally designed to deceive and has deceived customers and prospective customers as to the true origin of the services provided by Defendants or that the services are sponsored by, license from, authorized by or affiliated with MWAA.

14

66.     Defendants' conduct constitutes false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

67.     As a direct and proximate result of the willful and wanton conduct of Defendants, MWAA has been injured and will continue to suffer irreparable injury to its business and reputation unless this Court restrains Defendants from infringing on MWAA's service marks.

68.     MWAA has no adequate remedy at law, and is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(d).

69.     MWAA is entitled to recover actual damages and Defendants' profits pursuant to 15 U.S.C. § 1117(a); treble damages pursuant to 15 U.S.C. § 1117(a) and (b); and, attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a).

70.     As a result of the Defendants' actions as stated herein, MWAA has been damaged in an amount to be determined at trial.

## COUNT III

### Federal False Advertising in Violation of Lanham Act

71.     MWAA hereby realleges and incorporates Paragraphs 1 through 55, as if fully set forth herein.

72.     Defendants' continued commercial use of the WASHINGTON FLYER Marks to advertise or promote Defendants' services constitutes false and misleading descriptions and representations of fact in commercial advertising or promotion, misrepresenting the nature, characteristics, qualities of their or another person's services or commercial activities and likely to cause and are causing deception and influence or purchasing decisions in the market place.

73.     As a direct and proximate result of Defendants' false and misleading advertising, MWAA has been and is likely to continue to be injured by direct diversion of the provision of services from MWAA to Defendants, through Defendants' website, and by lessening the goodwill which MWAA's services enjoy with the purchasing public.

74.     Defendants' conduct constitutes false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

75.     As a direct and proximate result of Defendants' false advertising, MWAA has been injured and will continue to suffer irreparable injury to its business and reputation unless this Court restrains Defendants from engaging in such willful and wanton infringing conduct.

76.     MWAA has no adequate remedy at law, and is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(d).

77.     MWAA is entitled to recover actual damages and Defendants' profits pursuant to 15 U.S.C. § 1117(a); treble damages pursuant to 15 U.S.C. § 1117(a) and (b); and, attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a).

78.     As a result of the Defendants' actions as stated herein, MWAA has been damaged in an amount to be determined at trial.

## COUNT IV

### Federal Dilution in Violation of the Lanham Act

79.     MWAA hereby realleges and incorporates Paragraphs 1 through 55, as if fully set forth herein.

80. Due to MWAA's long-term and exclusive ownership and use of its distinctive federally-registered WASHINGTON FLYER Marks, such Marks have acquired a significant amount of fame and renown among consumers.

81. Defendants' continued commercial use of MWAA's federally-registered and famous service Marks will likely impair the distinctive quality and harm the reputation of its WASHINGTON FLYER Marks through either tarnishment of the Marks by Defendants or blurring as to the source of the services.

82. Defendants' conduct constitutes dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

83. As a direct and proximate result of Defendants' actions dilute MWAA's famous and distinctive WASHINGTON FLYER Marks, MWAA has been injured and will continue to suffer irreparable injury to its business and reputation unless this Court restrains Defendants from infringing in such willful and wanton conduct.

84. MWAA has no adequate remedy at law, and is entitled to injunctive relief pursuant to 15 U.S.C. § 1125(c).

85. MWAA is entitled to recover actual damages and Defendants' profits pursuant to 15 U.S.C. § 1117(a); treble damages pursuant to 15 U.S.C. § 1117(a) and (b); attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a).

86. As a result of the Defendants' actions as stated herein, MWAA has been damaged in an amount to be determined at trial.

## COUNT V

### Virginia Trademark and Service Mark Act (1998)

87.     MWAA hereby realleges and incorporates Paragraphs 1 through 55, as if fully set forth herein.

88.     Notwithstanding MWAA's demands for Defendants to cease their infringing activities, Defendants have continued to, without permission from MWAA, willfully and with the intention of benefiting from the reputation and goodwill of MWAA, use the WASHINGTON FLYER Marks in connection with Defendants' ground transportation services.

89.     Defendants' unauthorized practices , as alleged in the foregoing paragraphs, constitute service mark infringement in violation of the Virginia Trademark and Service Mark Act (1998) §§ 59.1-92.12 and 59.1-92.15.

90.     As a direct and proximate result of Defendants' willful and wanton conduct, MWAA has been injured and will continue to suffer irreparable injury to its business and reputation unless Defendants are restrained by this Court from infringing on MWAA's service marks.

91.     MWAA has no adequate remedy at law, and is entitled to injunctive relief pursuant to § 59.1-92.13 of the Act.

92.     MWAA is entitled to recover any and all damages to which it is entitled under § 59.1-92.13 of the Act, including reasonable attorneys' fees.

93.     As a result of the Defendants' actions as stated herein, MWAA has been damaged in an amount to be determined at trial.

## COUNT VI

### Virginia Unfair and Deceptive Trade Practices Act

94.     MWAA hereby realleges and incorporates Paragraphs 1 through 55, as if fully set forth herein.

95.     Defendants' unauthorized use of MWAA's service Marks on their websites, <washingtonflyer.info> and <sedanflyer.com>, is intentionally designed to falsely represent an affiliation or sponsorship between Defendants and MWAA for the purpose of deceiving and misleading consumers.

96.     Defendants' conduct constitutes unfair and deceptive trade practices in violation of the Virginia Consumer Protection Act, Code of Virginia, § 59.1-200.

97.     As a direct and proximate result of Defendants' willful and wanton conduct, MWAA has been injured and will continue to suffer irreparable injury to its business and reputation unless this Court restrains Defendants from infringing on MWAA's service marks.

98.     MWAA has no adequate remedy at law, and is entitled to injunctive relief pursuant to § 59.1-203 of the Virginia Consumer Protection Act.

99.     MWAA is entitled to recover any and all damages to which they are entitled under § 59.1-204 of the Virginia Consumer Protection Act, including actual damages, Defendants' profits, treble damages, attorneys' fees, and court costs.

100.    As a result of the Defendants' respective actions as stated herein, MWAA has been damaged in an amount to be determined at trial.

## Prayer for Relief

**WHEREFORE**, for the reasons stated above, Plaintiff, Metropolitan Washington Airports Authority, prays for relief and judgment against Defendants, and each of them, as follows:

1.     Preliminarily, during the pendency of this action, and permanently after the final hearing, enjoin Defendants from operating the websites located at <washingtonflyer.info> and <sedanflyer.com>, or any other website employing a domain name or containing content or metadata that is the same as or confusingly similar to MWAA's Mark, remove or transfer the foregoing websites to MWAA, as the Court deems appropriates;

2.     Preliminarily, during the pendency of this action, and permanently after the final hearing enjoin Defendants from using, imitating, copying, duplicating or otherwise commercially exploiting the WASHINGTON FLYER Marks or any mark confusingly similar to the MWAA's WASHINGTON FLYER Marks;

3.     Award MWAA its actual damages sustained, as to be determined at trial;

4.     Award MWAA Defendants' gains, profits and advantages derived during the time period of Defendants' infringement, false advertising and unfair competition;

5.     Award to MWAA damages for Defendants' intentional and willful conduct alleged herein a sum equal to three times the amount of the actual damages suffered by MWAA;

6.     Order Defendants to pay an appropriate amount as punitive damages to deter willful and wanton conduct such as theirs and to avoid future confusion or

20

deception of the public and unfair competition with MWAA's service marks pursuant to 15 U.S.C. § 1117(a);

7.   Declare this case to be an exceptional case within the meaning of 15 U.S.C. § 1117(a);

8.   Award MWAA its costs and attorneys' fees incurred in this action pursuant to 15 U.S.C. § 1117(a) and the Virginia Consumer Protection Act, Code of Virginia, § 59.1-204; and,

9.   Award such other and further relief as this Court deems just, equitable and proper.

Under penalty of perjury, I hereby declare that the above, to the best of my knowledge, is accurate and true.

_____
Jana M. Phillips
Associate General Counsel
Metropolitan Washington Airports Authority

7|20|2012
Date

Respectfully submitted,

BEAN, KINNEY & KORMAN, P.C.

_____
William F. Krebs, VSB 17347
Rachelle E. Hill VSB 74996
*Bean, Kinney & Korman, P.C.*
2300 Wilson Boulevard, Seventh Floor

21

Arlington, VA 22201
(703) 525-4000 (phone)
(703) 525-2207 (fax)
*Counsel for Plaintiff Metropolitan
Washington Airports Authority*